ORIGINAL

1 ERIC P. ISRAEL (State Bar No. 132426)
JOHN N. TEDFORD, IV (State Bar No. 205537)
2 DANNING, GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
3 Los Angeles, California 90067-2904
Telephone: (310) 277-0077
4 Facsimile: (310) 277-5735

5 Attorneys for Nancy Knupfer,
Chapter 11 Trustee

6

FILED

MAY 3 1 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

7

LODGED

MAY 2 1 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

8 **UNITED STATES BANKRUPTCY COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10 **LOS ANGELES DIVISION**

ENTERED

MAY 3 1 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

11

12 In re                                              )   Case No. LA 06-16059-BB
                                                     )
13 PW, LLC,                                           )   Chapter 11
                                                     )
14              Debtor.                               )   **ORDER CONFIRMING TRUSTEE'S**
                                                     )   **SALE TO DB BURBANK, LLC, OF**
15                                                   )   **SUBSTANTIALLY ALL ASSETS OF**
                                                     )   **THE ESTATE, AND DETERMINING**
16                                                   )   **THAT DB BURBANK IS A GOOD**
                                                     )   **FAITH PURCHASER UNDER SECTION**
17                                                   )   **363(M) OF THE BANKRUPTCY CODE**
                                                     )
18                                                   )   Date:    May 16, 2007
                                                     )   Time:    10:00 a.m.
19                                                   )   Place:   Courtroom 1475
                                                     )            255 E. Temple St.
20 _____          )            Los Angeles, CA

21          On May 16, 2007, at 10:00 a.m., pursuant to and in connection with this Court's *Order*

22 *Granting Chapter 11 Trustee's Motion for Order Authorizing the Sale of Substantially All of the*

23 *Assets of the Estate Free and Clear of Liens, Authorizing the Assumption and Assignment of*

24 *Certain Executory Contracts and Unexpired Leases, Determining the Value of the Assets Being*

25 *Sold and Valuing Claims Secured By Such Assets, Authorizing the Payment of Commissions to*

26 *Trustee's Real Estate Brokers, Waiver of 10-Day Stay, and Related Relief* (the "Sale Order")

27 entered on or about April 26, 2007, the Court heard and considered the request of Nancy Knupfer,

28 the Chapter 11 trustee (the "Trustee") for the estate of PW, LLC (the "Debtor") for an order

1   confirming her sale of substantially all assets of the Debtor's estate to DB Burbank, LLC ("DB

2   Burbank") or its designee, and determining that DB Burbank is a good faith purchaser under

3   section 363(m) of the Bankruptcy Code. Eric P. Israel of Danning, Gill, Diamond & Kollitz, LLP,

4   appeared on behalf of the Trustee, who was also present; Martin J. Brill of Levene, Neale, Bender,

5   Rankin & Brill LLP, appeared on behalf of the Debtor; Joel G. Samuels and Jeremy Rosenthal of

6   Sidley Austin LLP appeared on behalf of DB Burbank; Lewis R. Landau appeared on behalf of

7   Clear Channel Outdoor, Inc. ("Clear Channel"); and any other appearances were as noted on the

8   record.

9        The Court having reviewed and considered (a) the Trustee's motion filed on or about March

10  12, 2007, for approval of her sale of substantially all of the assets of the estate (the "Sale Motion")

11  and all other papers filed in support thereof, (b) all papers filed in opposition to the Sale Motion

12  except those that were filed by the Debtor (the Debtor's opposition to the Sale Motion having been

13  subsequently withdrawn at the hearing on April 5, 2007), (c) the *Trustee's Report Re: Overbids, in*

14  *Support of the Trustee's Motion for Order Authorizing the Sale of Substantially All of the Assets of*

15  *the Estate* (the "Trustee's Report"), together with the Declarations of Nancy Knupfer and Duncan

16  Lemmon, filed on or about May 10, 2007, (d) the *Declaration of Andrew Osborne in Support of*

17  *Request that DB Burbank LLC Be Found and Determined to Be a Good Faith Purchaser Entitled*

18  *to the Protections of Section 363(m) of the Bankruptcy Code in Connection with Purchase of Assets*

19  *from the Estate* (the "Osborne Declaration), filed on or about May 8, 2007, (e) the *Opposition of*

20  *Clear Channel Outdoor, Inc. to Order Finding DB Burbank, LLC a Purchaser in Good Faith under*

21  *11 U.S.C. § 363(m)*, together with the Declaration of Lewis R. Landau and the evidentiary

22  objections filed by Clear Channel on or about May 15, 2007, (f) *DB Burbank LLC's Reply to*

23  *Opposition of Clear Channel Outdoor, Inc. to Order Finding DB Burbank, LLC a Purchaser in*

24  *Good Faith under 11 U.S.C. § 363(m)* and the Declaration of Joel G. Samuels filed concurrently

25  therewith on or about May 15, 2007, and (g) the *Supplemental Declaration of Lewis R. Landau*

26  *Regarding Newly Discovered Documents DB Burbank, LLC Failed to Produce Pursuant to*

27  *Subpoena in Further Opposition to Order Finding DB Burbank, LLC a Purchaser in Good Faith*

28  *under 11 U.S.C. § 363(m)* filed on or about May 16, 2007, having heard oral argument of the

- 2 -

1  parties at the hearing, having found that notice of the relief sought by the Trustee was adequate and

2  proper, having found and determined that DB Burbank is a good faith purchaser under, and entitled

3  to the protections of, section 363(m) of the Bankruptcy Code, and having determined based upon

4  the Trustee's Report and the Knupfer Declaration and the Lemmon Declaration in support thereof

5  that no overbids were submitted by Qualified Overbidders prior to the Overbid Deadline (which

6  was established by the Sale Order as being May 7, 2007) and that therefore there is no Successful

7  Overbidder, based upon the findings and conclusions stated by the Court on the record at the

8  hearing and in the written final ruling attached as Exhibit "2" hereto and incorporated herein by

9  reference, good cause appearing therefor, *and having reviewed and considered Clear Channel's* *the* *objection to the form of this order* *and the trustee's reply thereto,*

10  **IT IS HEREBY ORDERED THAT:**

11      1.      The Trustee's sale to DB Burbank of the property of the Debtor's estate that is

12  described in Recital D of the Purchase and Sale Agreement (the "Sale Agreement") attached as

13  Exhibit "3" hereto is hereby confirmed.  The Trustee is hereby authorized, without further order of

14  the Court, to execute and enter into a written agreement with DB Burbank substantially conforming

15  to the form of the Sale Agreement attached as Exhibit "3" hereto, the terms of which are hereby

16  approved, and to consummate the transactions described therein in accordance with the provisions

17  thereof.  Notwithstanding the foregoing, to the extent that the assets described in Recital D of the

18  Sale Agreement includes the ownership interest of the estate in Eller-PW, LLC, such interest is not

19  being sold.  (The property of the estate being sold is collectively referred to herein as the "Assets").

20  A legal description of the real property being sold (collectively the "Real Property") is attached as

21  Exhibit "1" hereto and incorporated herein by reference.

22      2.      The sale price is the amount equal to the "Strike Price," as such term was defined in

23  the "Binding Term Sheet" (the "Binding Term Sheet") that was approved by this Court by order

24  entered on or about March 20, 2007 (the "Sale Procedures Order").  DB Burbank is authorized to

25  credit bid the full amount of the Strike Price pursuant to section 363(k) of the Bankruptcy Code.

26      3.      DB Burbank may, in its discretion, designate one or more third parties to be its

27  designee (any such third party designee is referred to herein as "Designee") to acquire title to the

28  Assets.  Pursuant to paragraph 9(d) of the Binding Term Sheet, any such Designee must be

1  designated by written notice to the Trustee on or before three business days prior to the date of the

2  closing of the sale (the "Closing"). If the Assets are to be sold to a Designee, DB Burbank shall

3  provide a representation and warranty to the Trustee at Closing to the effect that the Designee has

4  not paid an amount to DB Burbank which exceeds the total amount of debt then owing to DB

5  Burbank (including postpetition interest at the default rate and all fees, costs and charges owing to

6  DB Burbank under its loan documents). DB Burbank is not required to disclose the actual amount

7  paid by the Designee to DB Burbank to acquire DB Burbank's position. The Designee shall be

8  entitled to the same rights and protections that DB Burbank would have been entitled to if DB

9  Burbank were the buyer (including, without limitation, protections afforded by section 363(m) of

10  the Bankruptcy Code and the rights to obtain (a) title to the entirety of the Assets, (b) an

11  assignment of all contract rights and development rights in any way related to the Assets pursuant

12  to section 365 of the Bankruptcy Code, and (c) all of the estate's litigation rights, claims and causes

13  of action related to the International Church of the Foursquare Gospel (the "Church") and the

14  "Church Contract" (as defined in the Sale Agreement), including all rights and claims with respect

15  to all deposits previously paid to the Church pursuant to the Church Contract). Pursuant to

16  paragraph 9(d) of the Binding Term Sheet, in the event that the amount paid by the Designee to DB

17  Burbank exceeds the total amount of debt then owing to DB Burbank (including postpetition

18  interest at the default rate and all fees, costs and charges owing to DB Burbank under its loan

19  documents), then DB Burbank shall be obligated to remit any such excess over to the Trustee for

20  the benefit of the estate.

21      4.      Except as provided in paragraph 6 of this order, the sale shall be free and clear of all

22  liens and interests against the Assets (collectively the "Subject Liens and Interests") pursuant to

23  sections 363(f)(2), (4) and (5) of the Bankruptcy Code, which liens and interests shall be removed

24  from the Assets and attach to the sale proceeds with the same force, effect, validity and priority that

25  they have as against the Assets, including without limitation the following:

26          a.      unrecorded real property tax liens in favor of the County of Los Angeles;

27          b.      any and all liens filed or recorded in favor of DB Burbank or its
predecessors-in-interest, including but not limited to the following:

28

-4-

308999.05 [XP]  0616059A

1    i.    a deed of trust recorded on January 11, 2001, as instrument no. 01-0064326 in favor of Metwest Mortgage Service, Inc., to secure an indebtedness in the original
2    principal sum of $10,000,000;

3    ii.    a deed of trust recorded on June 15, 2001, as instrument no. 01-1040002 in favor of Western United Life Assurance Company, to secure an indebtedness in the
4    original principal sum of $10,000,000;

5    iii.    a deed of trust recorded on January 30, 2002, as instrument no. 02-0226824 in favor of Western United Life Assurance Company, to secure an indebtedness in the
6    original principal sum of $10,000,000;

7    iv.    a deed of trust recorded on July 2, 2003, as instrument no. 03-1899425 in favor of Western United Life Assurance Company, to secure an indebtedness in the
8    original principal sum of $10,000,000;

9    v.    a deed of trust recorded on August 1, 2003, as instrument no. 03-2205904 in favor of Western United Life Assurance Company, to secure an indebtedness in the
10    original principal sum of $10,000,000;

11    vi.    a deed of trust recorded on August 1, 2003, as instrument no. 03-2222169 in favor of Western United Life Assurance Company, to secure an indebtedness in the
12    original principal sum of $10,000,000;

13    vii.    a deed of trust recorded on September 17, 2003, as instrument no. 03-2736277 in favor of Western United Life Assurance Company, to secure an indebtedness in the
14    original principal sum of $24,635,000;

15    viii.    a deed of trust recorded on December 2, 2003, as instrument no. 03-3628041 in favor of Western United Life Assurance Company, to secure an indebtedness in the
16    original principal sum of $24,635,000;

17    ix.    an amended and restated deed of trust recorded on March 17, 2005, as instrument no. 05-0612812 in favor of DB Burbank, LLC, to secure an indebtedness in the
18    original principal sum of $28,767,360.37;

19    x.    an assignment of leases and rents recorded on March 17, 2005, as instrument no. 05-0612813 in favor of DB Burbank, LLC, to secure an indebtedness in the original
20    principal sum of $28,767,360.37;

21    xi.    a UCC Financing Statement recorded on March 17, 2005, as instrument no. 05-0612821 in favor of DB Burbank, LLC, to secure an indebtedness in the original
22    principal sum of $28,767,360.37;

23    xii.    a modification and spreader agreement recorded on June 26, 2006, as instrument no. 06-1394955 in favor of DB Burbank, LLC, to secure an indebtedness in the original
24    principal sum of $28,767,360.37;

25    xiii.    a deed of trust recorded on September 7, 2006, as instrument no. 06-1996767 in favor of DB Burbank, LLC, to secure an indebtedness in the original principal sum of
26    $5,673,067;

27    xiv.    a modification and spreader agreement recorded on October 3, 2006, as instrument no. 06-2201665 in favor of DB Burbank, LLC, to secure an indebtedness in the
28    original principal sum of $5,673,067;

1      xv.    a subordination agreement and second modification and spreader of amended and restated deed of trust recorded on November 9, 2006, as instrument no. 06-2490612

2    in favor of DB Burbank, LLC, to secure an indebtedness in the original principal sum of $28,767,360.37;

3

4      xvi.    a UCC Financing Statement filed with the Secretary of State on January 16, 2001, filing no. 0101860346, in favor of Western United Life Assurance Company;

5      xvii.    a UCC Financing Statement filed with the Secretary of State on June 7, 2001, filing no. 0116060204, in favor of Metwest Mortgage Services, Inc.;

6

7      xviii.    a UCC Financing Statement recorded on June 15, 2001, as instrument no. 01-1040003, in favor of Western United Life Assurance Company, as ultimately assigned to DB Burbank LLC via the following recorded instruments 04-2596680, 04-2608794 and 05-

8    06122814, recorded on October 8, 2004, October 12, 2004 and March 17, 2005, respectively;

9      xix.    a UCC Financing Statement filed with the Secretary of State on July 12, 2001, filing no. 0119460012, in favor of Western United Life Assurance Company;

10

11      xx.    a UCC Financing Statement recorded on January 30, 2002, as instrument no. 02-0226825, in favor of Western United Life Assurance Company, as ultimately assigned to DB Burbank LLC via the following recorded instruments 04-2596681, 04-2608795 and

12    05-06122815, recorded on October 8, 2004, October 12, 2004 and March 17, 2005, respectively;

13      xxi.    a UCC Financing Statement filed with the Secretary of State on February 19, 2002, filing no. 0205160007, in favor of Western United Life Assurance Company;

14

15      xxii.    a UCC Financing Statement recorded on July 2, 2003, as instrument no. 03-1899426, in favor of Western United Life Assurance Company, as ultimately assigned to DB Burbank LLC via the following recorded instruments 04-2596686, 04-2608796 and 05-

16    06122816, recorded on October 8, 2004, October 12, 2004 and March 17, 2005, respectively;

17      xxiii.    a UCC Financing Statement filed with the Secretary of State on July 15, 2003, filing no. 0319760509, in favor of Western United Life Assurance Company;

18

19      xxiv.    a UCC Financing Statement recorded on August 1, 2003, as instrument no. 03-2205905, in favor of Western United Life Assurance Company, as ultimately assigned to DB Burbank LLC via the following recorded instruments 04-2596683, 04-2608797 and

20    05-06122821, recorded on October 8, 2004, October 12, 2004 and March 17, 2005, respectively;

21      xxv.    a UCC Financing Statement recorded on August 1, 2003, as instrument no. 03-2222170, in favor of Western United Life Assurance Company, as ultimately

22    assigned to DB Burbank LLC via the following recorded instruments 04-2596684, 04-2608798 and 05-06122822, recorded on October 8, 2004, October 12, 2004 and March 17, 2005, respectively;

23

24      xxvi.    a UCC Financing Statement filed with the Secretary of State on August 8, 2003, filing no. 0322560082, in favor of Western United Life Assurance Company;

25      xxvii.    a UCC Financing Statement filed with the Secretary of State on August 8, 2003, filing no. 0322560091, in favor of Western United Life Assurance Company;

26

27      xxviii.    a UCC Financing Statement recorded on September 17, 2003, as instrument no. 03-2736278, in favor of Western United Life Assurance Company, as ultimately assigned to DB Burbank LLC via the following recorded instruments 04-2596685, 04-2608799 and

28    05-06122819, recorded on October 8, 2004, October 12, 2004 and March 17, 2005, respectively;

- 6 -

1      xxix. a UCC Financing Statement filed with the Secretary of State on
September 19, 2003, filing no. 0326560443, in favor of Western United Life Assurance Company;

2

      xxx. a UCC Financing Statement recorded on December 2, 2003, as
3 instrument no. 03-3628042, in favor of Western United Life Assurance Company, as ultimately
assigned to DB Burbank LLC via the following recorded instruments 04-2596686, 04-2608700 and
4 05-06122820, recorded on October 8, 2004, October 12, 2004 and March 17, 2005, respectively;

5      xxxi. a UCC Financing Statement filed with the Secretary of State on
December 9, 2003, filing no. 0334660058, in favor of Western United Life Assurance Company;

6

    c. any and all liens filed or recorded in favor of Clear Channel Outdoor, Inc., or
7 its predecessors-in-interest, including but not limited to the following:

8      i. a deed of trust recorded on June 15, 2001, as instrument no. 01-
1040005 in favor of Eller Media Company, to secure an indebtedness in the original principal sum
9 of $1,250,000;

10      ii. a deed of trust recorded on July 12, 2001, as instrument no. 01-
1210861 in favor of Eller Media Company, to secure an indebtedness in the original principal sum
11 of $1,250,000;

12      iii. a deed of trust recorded on February 8, 2002, as instrument no. 02-
0310565 in favor of Clear Channel Outdoor, Inc., to secure an indebtedness in the original principal
13 sum of $1,250,000;

14      iv. a deed of trust recorded on July 2, 2003, as instrument no. 03-
1899427 in favor of Clear Channel Outdoor, Inc., to secure an indebtedness in the original principal
15 sum of $1,250,000;

16      v. a deed of trust recorded on August 1, 2003, as instrument no. 03-
2205906 in favor of Clear Channel Outdoor, Inc., to secure an indebtedness in the original principal
17 sum of $1,250,000;

18      vi. a deed of trust recorded on August 1, 2003, as instrument no. 03-
2222171 in favor of Clear Channel Outdoor, Inc., to secure an indebtedness in the original principal
19 sum of $1,250,000;

20      vii. a deed of trust recorded on October 9, 2003, as instrument no. 03-
3015731 in favor of Clear Channel Outdoor, Inc., to secure an indebtedness in the original principal
21 sum of $1,250,000;

22      viii. a deed of trust recorded on December 2, 2003, as instrument no. 03-
3628044 in favor of Clear Channel Outdoor, Inc., to secure an indebtedness in the original principal
23 sum of $1,250,000;

24      ix. a deed of trust recorded on November 17, 2006, as instrument no. 06-
2555298 in favor of Clear Channel Outdoor, Inc., to secure an indebtedness in the original principal
25 sum of $1,250,000; and

26      x. a UCC Financing Statement filed with the Secretary of State on
December 22, 2000, filing no. 0036460275, in favor of Eller Media Company;

27

28 ///

1          d.      a mechanic's lien recorded on October 4, 2006, as instrument number 06-
2214555 in favor of A-1 Plumbing, to secure an indebtedness in the original principal sum of
2  $3,326; and

3          e.      any and all certificates recorded by the Receiver and which, pursuant to
orders of the Superior Court, constitute liens against the Assets:
4
5          i.      Receiver's Certificate No. 1, recorded on September 11, 2006, as
instrument no. 06-2014616, in the original principal sum of $50,000;

6          ii.     Receiver's Certificate No. 2, recorded on September 11, 2006, as
instrument no. 06-2014617, in the original principal sum of $56,457;
7
8          iii.    Receiver's Certificate No. 3, recorded on September 11, 2006, as
instrument no. 06-2014618, in the original principal sum of $1,488,363.50;

9          iv.     Receiver's Certificate No. 4, recorded on October 3, 2006, as
instrument no. 06-2201662, in the original principal sum of $2,627,243.76; and
10
11         v.      Receiver's Certificate No. 5, recorded on November 16, 2006, as
instrument no. 20062539136, in the original principal sum of $318,922.

12      5.      The recordation of this order with the Los Angeles County Recorder shall constitute

13  a discharge, termination and cancellation as to the Assets, including the Real Property, of all of the

14  Subject Liens and Interests without the need for reconveyance or release of such liens,

15  encumbrances or other interests.

16      6.      With respect to the deed of trust recorded on April 10, 2006 in favor of Walter D.

17  Wentworth, as Trustee of the Wentworth Trust Dated April 20, 1993, against the parcel(s) of real

18  property known in this case as the "Wentworth Property" (the "Wentworth Deed of Trust"), the

19  Wentworth Deed of Trust shall not attach to the sale proceeds and DB Burbank or its Designee

20  shall take title to the parcel(s) of real property secured by the Wentworth Deed of Trust subject

21  thereto.  The Court shall retain jurisdiction with respect to any dispute as to the amount of the debt

22  secured by the Wentworth Deed of Trust and the obligation to reconvey the Wentworth Deed of

23  Trust in connection with any subsequent repayment of the debt secured thereby.

24      7.      Except as provided below with respect to the Church Contract, the Trustee is

25  authorized to assume and assign to DB Burbank or its Designee the "Development Agreement"

26  between the Debtor and the City of Burbank and any and all other executory contracts and

27  unexpired leases relating to the Burbank Media Center and the Real Property, including but not

28  limited to the contracts and leases identified in Exhibit "4" hereto (collectively the "Subject

1  Contracts and Leases"). Except as provided below with respect to the Church Contract, the Court

2  determines that (a) there has been no default of the Debtor's obligations under the Subject

3  Contracts and Leases, and (b) the Trustee is not required to pay any amount to the non-debtor

4  parties to the Subject Contracts and Leases as a condition of assumption and assignment thereof

5  pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code.

6         8.      The Trustee is authorized to assume and assign to DB Burbank or its Designee the

7  estate's rights, if any, under the Church Contract, subject to the following: (a) this order does not

8  constitute a determination as to the existence of and enforceability of the Church Contract as of the

9  Petition Date; (b) any and all rights and defenses of the Church to any claims of the estate relating

10  to the Church, the Church Contract, and the Church Property (which claims are being sold and

11  transferred to DB Burbank or its Designee) are expressly reserved (as are the rights, claims and

12  defenses of the estate); (c) this order does not constitute a determination as to the existence of or

13  assumability and assignability of the Church Contract; (d) any and all rights and defenses relating

14  to existence of or assumability and assignability of the Church Contract are expressly reserved;

15  (e) all rights and obligations of the estate to litigate regarding the existence of or assumability and

16  assignability of the Church Contract shall be transferred to DB Burbank or its Designee; and (f) if

17  the Court later determines that the Church Contract exists and is an assumable and assignable

18  executory contract, then the Church Contract will be deemed to have been assumed and assigned to

19  DB Burbank or its Designee without further order of the Court, without prejudice to the Church's

20  claims, if any, for allowable administrative damages.

21         9.      If DB Burbank or its Designee seeks to have the Church Contract assumed and

22  assigned, within sixty (60) days after the closing of the sale, DB Burbank or its Designee must

23  commence an adversary proceeding by filing a complaint requesting a determination as to the

24  assumability and assignability of the Church Contract (such complaint may also seek such other

25  relief relating to the claims being sold and transferred to DB Burbank or its Designee). Subject to

26  the above, the Court shall retain jurisdiction to resolve any and all disputes between the Church and

27  DB Burbank or its Designee relating to the claims being sold and transferred (including avoidance

28  actions and other causes of action acquired from the estate as part of the Assets purchased by DB

-9-

1  Burbank or its Designee), the existence of and assumability and assignability of the Church

2  Contract, and the amount, if any, of the cure (or adequate assurance thereof) that must be furnished

3  by DB Burbank or its Designee as a condition to the assumption and assignment of the Church

4  Contract.  In the event that the Court enters a judgment determining that (a) the Church Contract is

5  an assumable and assignable executory contract and (b) DB Burbank or its Designee must pay a

6  cash "cure" payment as a condition to the assumption and assignment thereof, then the amount of

7  such cash payment as may be determined by the Court must be paid by DB Burbank or its

8  Designee within thirty (30) days after the Court's judgment is final, and the Debtor's estate shall

9  have no liability therefor.

10        10.        The Court hereby finds and determines that DB Burbank's purchase of the Assets

11  for the Strike Price on the terms set forth in the Sale Agreement, the Binding Term Sheet, the Sale

12  Order and this order has been undertaken in good faith, that DB Burbank is a purchaser of the

13  Assets in good faith as that term is used in section 363(m) of the Bankruptcy Code, and that DB

14  Burbank is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

15  Accordingly, the reversal or modification on appeal of the authorization provided herein shall not

16  affect the validity of the Trustee's sale of the Assets to DB Burbank or its Designee (including the

17  assumption and assignment of the Subject Contracts and Leases), unless such authorization is

18  stayed pending such appeal.  Clear Channel's objection to the Court's determination that DB

19  Burbank is a good faith purchaser is hereby overruled in its entirety.

20        11.        Pursuant to paragraph 4 of the Binding Term Sheet, DB Burbank or its Designee

21  shall pay (a) the documentary transfer tax, if any, which may be required to be paid in connection

22  with the conveyance of the Assets to DB Burbank or its Designee, (b) the cost of recording the

23  deeds to the Real Property, (c) the cost of any owner's title policy, including all endorsements

24  thereto, in the event that DB Burbank or its Designee elects to obtain such an owner's title policy,

25  (d) all reasonable costs and fees incurred by the third-party escrow agent selected by DB Burbank

26  or its Designee and payable to or for the account of such escrow agent at closing, and (e) all

27  accrued but unpaid real estate taxes constituting a senior lien on the Real Property unless DB

28  ///

- 10 -

1   Burbank or its Designee elects to take title to the Real Property subject to any such senior lien for

2   accrued but unpaid real estate taxes.

3          12.     Pursuant to paragraph 5(a)(i) of the Binding Term Sheet, all tenant security deposits

4   actually held by the Trustee as of the date of Closing, whether via turnover from the state court

5   receiver (the "Receiver") or directly paid to the Trustee, shall be paid over at Closing to DB

6   Burbank or its Designee for the account thereof.  There shall be no further adjustment in favor of

7   DB Burbank or its Designee in respect of the obligations owed to any tenants on account of

8   security deposits paid by such tenants which were not turned over by the Debtor to the Receiver

9   and thus were not available to be turned over by the Receiver to the Trustee.  DB Burbank or its

10  Designee shall be responsible for the return of all tenant security deposits (less any amounts

11  permitted to be retained or deducted as a matter of applicable nonbankruptcy law) as and when

12  each tenant becomes entitled thereto, and shall indemnify the estate with respect to any liability on

13  account of such tenant security deposits.

14         13.     Pursuant to paragraph 5(b) of the Binding Term Sheet, an adjustment shall be made

15  at Closing in favor of DB Burbank or its Designee on account of prepaid tenant rents.  The Trustee

16  shall credit DB Burbank for a prorated amount of any prepaid tenant rents based upon the actual

17  date of Closing.  The amount of such credit shall be paid to DB Burbank by the Trustee in cash out

18  of the funds held by the Trustee as of the date of Closing which constitute cash collateral subject to

19  DB Burbank's security interest.

20         14.     Pursuant to paragraph 5(c) of the Binding Term Sheet, an adjustment shall be made

21  at Closing on account of outstanding accounts payable in accordance with usual custom and

22  practice for a real estate transaction.  The Trustee shall be liable for all accrued but unpaid expenses

23  through the date of Closing, and DB Burbank or its Designee shall be liable for expenses first

24  arising on and after the date of Closing.

25         15.     Pursuant to paragraph 5(d) of the Binding Term Sheet, from and after the date of

26  Closing, DB Burbank or its Designee shall be entitled, at its own expense, to pursue and collect on

27  any and all delinquent tenant rents owed by present tenants or by former tenants so long as they

28  were tenants in possession as of January 31, 2007.  The Trustee shall not have the right, post-

1  Closing, to pursue any such delinquent tenant rents, and any claims, causes of action and other

2  rights belonging to the estate in respect of such delinquent tenant rents shall be assigned to DB

3  Burbank or its Designee at Closing without any adjustment to the purchase price. The Trustee shall

4  retain the right to pursue, at the sole expense of the estate, any and all delinquent rent claims with

5  respect to former tenants who were no longer tenants in possession as of January 31, 2007, and DB

6  Burbank or its Designee shall not have any rights with respect to such delinquent rents owed by

7  former tenants who were no longer tenants in possession as of January 31, 2007.

8  16.  Pursuant to paragraph 5(e) of the Binding Term Sheet, real estate taxes shall be

9  prorated at Closing in accordance with usual custom and practice for a real estate transaction. All

10  amounts reserved by the Trustee for the payment of real estate taxes shall be paid over to DB

11  Burbank or its Designee if not previously utilized for the payment of real estate taxes, whereupon

12  DB Burbank or its Designee shall assume responsibility for the payment of any and all unpaid real

13  estate taxes as of the date of Closing.

14  17.  Pursuant to paragraph 5(e) of the Binding Term Sheet, the amount of any prepaid

15  insurance shall be prorated at Closing. All amounts reserved by the Trustee for payment of

16  insurance shall be paid over to DB Burbank or its Designee if not previously utilized for the

17  payment of insurance premium renewals, whereupon DB Burbank or its Designee shall assume

18  responsibility for the payment of any and all insurance premiums from and after the date of

19  Closing. To the extent that DB Burbank or its Designee wishes to obtain an assignment of any

20  existing insurance policies, assuming such insurance policies are assignable, DB Burbank or its

21  Designee shall notify the Trustee not less than twenty (20) days prior to Closing so that the

22  appropriate arrangements can be made. Any such assignment shall be without warranty or recourse

23  as to assignability. DB Burbank or its Designee shall be responsible for its own insurance from and

24  after the Closing.

25  18.  Pursuant to paragraphs 7 and 8 of the Binding Term Sheet, DB Burbank shall pay

26  the sum of $800,000 (the "Carve-Out Amount") to the Trustee, through escrow, at Closing. The

27  Carve-Out Amount may be utilized by the Trustee for any permissible purpose in accordance with

28  applicable provisions of the Bankruptcy Code, and is free and clear of all the Subject Liens and

- 12 -

1  Interests. DB Burbank shall not be entitled to any portion of the Carve-Out Amount. The Carve-

2  Out Amount shall be reduced, dollar-for-dollar up to a maximum of $250,000, to the extent that

3  DB Burbank pays the Receiver and/or the Receiver's counsel pursuant to the *Stipulation Resolving*

4  *Receiver's Motion under 503(b) and 543(c)(2)* and the order of this Court approving such

5  stipulation entered on or about March 28, 2007. Such payment shall be made by DB Burbank to

6  the Receiver within ten (10) days after the date of Closing.

7        19.    Pursuant to paragraph 8 of the Binding Term Sheet, any and all rights of the Trustee

8  and the Debtor's estate to surcharge the Real Property or DB Burbank or its Designee pursuant to

9  section 506(c) or any other provision of the Bankruptcy Code are waived.

10        20.    Pursuant to paragraph 9(a) of the Binding Term Sheet, DB Burbank or its Designee

11  shall retain its lien on the cash collateral of the estate, net of operating expenses incurred through

12  the date of Closing. However, the Carve-Out Amount shall be free and clear, once paid, from any

13  lien in favor of DB Burbank or its Designee.

14        21.    The date by which DB Burbank or its Designee must file a proof of claim with the

15  Clerk of the Court with respect to its unsecured deficiency claim against the Debtor's estate shall

16  be forty-five (45) days after the date of Closing, notwithstanding the bar date previously

17  established by the Court for the filing of claims against the estate. Pursuant to paragraph 9(b) of

18  the Binding Term Sheet, DB Burbank or its Designee shall have the right to share ratably as a

19  general, non-priority unsecured creditor against the estate in distributions from estate property.

20  However, neither DB Burbank nor its Designee shall have the right to share ratably in any

21  distribution from the Carve-Out Amount.

22        22.    Pursuant to paragraphs 1 and 11 of the Binding Term Sheet, DB Burbank shall have

23  the right of specific performance to compel the Trustee to sell the Assets to DB Burbank or its

24  Designee for the Strike Price via a credit bid under section 363(k) of the Bankruptcy Code and

25  subject to payment of the Carve-Out Amount. The Trustee shall have the right of specific

26  performance to compel such a sale.

27        23.    Pursuant to paragraphs 1 and 11 of the Binding Term Sheet, nothing contained in

28  any plan of reorganization (or liquidation) confirmed in this case or any order confirming any such

- 13 -

1  plan of reorganization (or liquidation), or any other order entered in this case, shall conflict with or

2  derogate from the terms and provisions of the Sale Agreement, the Binding Term Sheet, the Sale

3  Order, the Sale Procedures Order, or this order.  Further, the terms and provisions of this order

4  shall be binding upon any subsequently appointed Chapter 7 trustee and any other estate

5  representative in all respects.

6      24.    The Trustee is authorized to execute all documents and otherwise take all actions

7  she deems necessary and appropriate, without further order of the Court, to close the sale of the

8  Assets to DB Burbank or its Designee.

9      25.    The failure to specifically include or make reference to any particular provision of

10  the Sale Agreement in this order shall not diminish or impair the effectiveness of such provision, it

11  being the intent of the Court that the Sale Agreement is authorized and approved in its entirety.

12      26.    The Court retains jurisdiction, including after the closing of this bankruptcy case, to

13  (a) interpret, implement and enforce the terms and provisions of this order, the Sale Agreement

14  (and any and all amendments thereto or waivers or consents thereunder), the Sale Order, the Sale

15  Procedures Order and any and all other orders of the Court relating to the Trustee's sale of the

16  Assets to DB Burbank or its Designee, and (b) hear, determine and resolve any disputes arising

17  under or related to the Sale Agreement or the sale of the Assets to DB Burbank or its Designee.

18  *27. Clear Channel's objection to the form of this order is hereby overruled. \**

19  DATED: *5/31/07*

                       SHERI BLUEBOND

20               UNITED STATES BANKRUPTCY JUDGE

21

22

23

24  *\* The parties discussed this issue at one of the hearings*

25  *on this motion and explained to the Court on*

26  *the record that there would be no excess*

27  *sale proceeds above and beyond the amount*

28  *necessary to satisfy DB Burbank's lien to which junior liens could attach unless there were overbidders who bid up the price beyond the spread.*

                              - 14 -

## EXHIBIT "1"

## LEGAL DESCRIPTION

Real property in the City of Burbank, County of Los Angeles, State of California, described as follows:

### PARCEL 1: (3400 West Alameda)

Lots 8, 9 and 10 of Tract No. 10135, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 141 Pages 21 and 22 of Maps, in the office of the County Recorder of said County.

NOTE: The Los Angeles County Tax Collector shows the situs address of said land as 3400 W Alameda Avenue, Burbank, CA 91305.

Assessor's Parcel No. 2483-023-430

### PARCEL 2: (3407 West Olive)

Parcel 2A:

That portion of Lot 1 in Block 63, Subdivision of the Rancho Providencia and Scott Tract, in the City of Burbank, in the County of Los Angeles, State of California, as per map recorded in Book 43, Pages 47 et seq., of Miscellaneous Records, in the office of the County Recorder of said County, described as follows:

Beginning at a point in the Southeasterly line of Lot 14 of Tract No. 10135, as shown on map recorded in Book 141 Pages 21 and 22 of Maps, in the office of the County Recorder of said County, distant South 40° 10' 35" West 56 feet from the most Easterly corner of said Lot 14, said point being the most Northerly corner of the land described in Certificate of Title No. RW-45762, on file in the office of the Registrar of Titles of said County; thence along the Southeasterly line of said Tract No. 10135, South 40° 10' 35" West 20.27 feet to a line parallel with and distant 27 feet Southwesterly, measured at right angles, from the Northeasterly line of said land; thence parallel with said Northeasterly line South 22° 56' 55" East 138.79 feet to the Northwesterly line of Olive Avenue, 80 feet wide, as described in Document No. 190759, on file in the office of the Registrar of Titles; thence along said Northwesterly line North 40° 10' 35" East 30.27 feet to the most Easterly corner of said land; thence North 22° 56' 55" West 138.79 feet to the point of beginning.

Parcel 2B:

That portion of Lot 1 in Block 63 of the Subdivision of the Rancho Providencia and Scott Tract, in the City of Burbank, in the County of Los Angeles, State of California, as shown on map recorded in Book 43 Pages 47, et seq., of Miscellaneous Records, in the office of the County Recorder of said County, described as follows:

Commencing at the intersection of the Northwesterly line of Olive Avenue with the Northerly prolongation of the Easterly line of Avon Street, as said Avenue and Street are shown on map of Tract No. 7553, recorded in Book 99 Page 16 of Maps, in the office of the County Recorder of said County; thence along said prolongation North 23° 56' 55" West 150.00 feet; thence parallel with said Northwesterly line of Olive Avenue North 40° 10' 35" East 168.96 feet to the True point of beginning; thence continuing North 40° 10' 35" East 47.46 feet to the Southwesterly line of the land described in Certificate of Title No. YV-92196 on file in the office of the Registrar; thence along said Southwesterly line, South 22° 56" East 138.79 feet to a line that is parallel with and distant 10.00 feet Northwesterly, at right angles, from said Northwesterly line of Olive Street; thence along last mentioned parallel line South 40° 10' 35" West 47.46 feet to a line South 40° 10' 35" West 47.46 feet to a line that is parallel with Westerly line of Lima Street as shown on the map of Tract No. 10135, recorded in Book 141 Pages 21 and 22 of Maps, Records of said County and passes through the True point of beginning; thence North 22° 56' 55" West 138.79 feet to the True point of beginning.

Assessor's Parcel No. 2483-023-424

**PARCEL 3: (133-135 North Avon)**

Parcel 3A:

That portion of Lot 2 in Block 63 of Rancho Providencia and Scott Tract, in the City of Burbank, in the County of Los Angeles, State of California, as per map recorded in Book 43 Page 47 of Miscellaneous Records, in the Office of the County Recorder of said County, described as follows:

Commencing at the most Northerly corner of said Lot 2, thence Southeasterly along the Northeasterly line thereof, 25 feet to the True Point of Beginning; thence continuing Southeasterly along the Northeasterly line 266.65 feet, more or less, to the most Northerly corner of the land described in the deed to Ernest J. Hentschel and wife, recorded in Book 3418 Page 316 Official Records, thence Southwesterly at right angles, to said Northeasterly line 168.61 feet more or less to the Northeasterly line of Tract No. 9560, recorded in Book 133 Pages 43 and 44 of Maps, records of said county, thence Northwesterly along said last mentioned Northeasterly line, 116.78 feet more or less to the most Northerly corner of said Lot 3 of said Tract, thence Northwesterly along the Northeasterly line of the land described in deed to Joseph Frank Suppon and wife, recorded in Book 6862 Page 217 of Official Records of said county, 150 feet to the Southeasterly line of the land described in deed to the City of Burbank, recorded in Book 3207 Page 290 of official Records of said county, thence Northeasterly along said Southeasterly line, 168.55 feet to the True Point of Beginning.

Except therefrom the Southeasterly 214.36 feet thereof.

Legal Description
Page 2 of 10

00016

Parcel 3B:

An easement for ingress and egress over a strip of land 5 feet in width the Northwesterly line of said strip, being the Southeasterly line of Parcel 1 described above, said strip being founded Northeasterly and Southwesterly by the Southeasterly prolongation of the Northeasterly and Southwesterly line of said Parcel 1.

Assessor's Parcel No. 2483-024-401

**PARCEL 4: (129-131 North Avon)**

Parcel 4A:

The Northwesterly 50 feet of the Southeasterly 214.36 feet of that portion of Lot 2, in Block 63, of Ranch Providencia & Scott Tract, in the City of Burbank, in the County of Los Angeles, State of California, as per map recorded in Book 43 Page 47 et seq., of Miscellaneous Records, in the Office of the County Recorder of said County, described as follows:

Commencing at the most Northerly corner of said Lot 2; thence Southeasterly along the Northeasterly line thereof, 25 feet to the True Point of Beginning; thence continuing Southeasterly along said Northeasterly line, 266.65 feet, more or less, to the most Northerly corner of the land described in deed to Ernest J. Hentschel and wife, recorded in Book 3418 Page 316, Official Records; thence Southwesterly at the right angles to said Northeasterly line, 168.61 feet, more or less, to the Northeasterly line of Tract 9560, as per map recorded in Book 133 Pages 43 and 44 of Maps, records of said county; thence Northwesterly along said last mentioned Northeasterly line, 116.78 feet, more or less, to the most Northerly corner of said Lot 3 of said Tract; thence Northwesterly along the Northeasterly line of the land described in deed to Joseph Frank Suppon and wife, recorded in Book 6862 Page 217, Official Records of said county, 150 feet to the Southeasterly line of the land described in the deed to the City of Burbank, recorded in Book 3207 Page 290, Official Records of said county; thence Northeasterly along said Southeasterly line, 168.55 feet to the point of beginning.

Parcel 4B:

An easement for ingress and egress over a strip of land 5 feet in width, the Northwesterly line of said strip being the Southeasterly line of Parcel 1 described above, said strip being bounded Northeasterly and Southwesterly by the Southeasterly prolongation of the Northeasterly and Southwesterly lines of said Parcel 1.

Assessor's Parcel No. 2483-024-402

00017

**PARCEL 5: (125-127 North Avon)**

The Northerly 50 feet of the Southerly 164.36 feet of that portion of Lot 2 in Block 63 of Rancho Providencia and Scott Tract, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 43 Page 47 et seq., of Miscellaneous Records, in the Office of the County Recorder of said County, described as follows:

Commencing at the most Northerly corner of said Lot 2; thence Southeasterly along the Northeasterly line thereof, 25 feet to the true point of beginning; thence continuing Southeasterly along said Northeasterly line, 266.65 feet, more or less, to the most Northerly corner of the land described in deed recorded in Book 3418 Page 316, Official Records; thence Southwesterly at right angles to said Northeasterly line, 168.61 feet, more or less, to the Northeasterly line, of Tract No. 9560 recorded in Book 133 Pages 43 and 44 of Maps, records of said County: thence Northwesterly along said last mentioned Northeasterly line 116.78 feet, more or less, to the most Northerly corner of said Lot 3 of said Tract; thence Northwesterly along the Northeasterly line of the land described in Deed to Joseph Frank Suppon and wife, recorded in Book 6862 page 217, Official Records of said County, 150 feet to the Southeasterly line of the land described in the Deed to the City of Burbank, recorded In Book 320 Page 290, Official Records of said County; thence Northeasterly along said Southeasterly line 168.55 feet to the True point of beginning.

Except the Northwesterly 5 feet of said land.

Assessor's Parcel No. 2483-024-403

**PARCEL 6: (121-123 North Avon)**

The Northerly 50 feet of the Southerly 114.36 feet of that portion of Lot 2 in Block 63 of Rancho Providencia and Scott Tract, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 43 Page 47 et seq., of Miscellaneous Records, in the Office of the County Recorder of said County, described as follows:

Commencing at the most Northerly corner of said Lot 2; thence Southeasterly along the Northeasterly line thereof 25 feet to the true point of beginning; thence continuing Southeasterly along said Northeasterly line 266.66 feet, more or less, to the most Northerly corner of the land described in deed recorded in Book 3418 Page 316 Official Records; thence Southwesterly at right angles to said Northeasterly line 168.61 feet, more or less, to the Northeasterly line of Tract No. 9560, recorded in Book 133 Page 43 and 44 of Maps; thence Northwesterly along said last mentioned Northeasterly line 116.78 feet, more or less, to the most Northerly corner of said Lot 3 of said Tract; thence Northwesterly along the Northeasterly line of land described in deed to Joseph Frank Suppon and wife, recorded in Book 6862 Page 217 Official Records, 150 feet to the Southeasterly line of the and described in deed to the City of Burbank, recorded in Book 3207 Page 290 Official Records; thence Northeasterly along said Southeasterly line of 168.55 feet to the true point of beginning.

Assessor's Parcel No. 2483-024-404

**PARCEL 7: (117-119 North Avon)**

The Southerly 64.36 feet of that portion of Lot(s) 2 in Block 63 of Rancho Providencia and Scott Tract, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 43 Page(s) 47 et seq. of Miscellaneous Records, in the office of the County Recorder of said County, described as follows:

Commencing at the most Northerly corner of said Lot 2; thence Southeasterly along the Northeasterly line thereof 25 feet to the True Point of Beginning; thence continuing Southeasterly along said Northeasterly line 266.65 feet, more or less, to the most Northerly corner of the land described in Deed to Ernest J. Hantschel and wife, recorded in Book 3418 Page 316, of Official Records; thence Southwesterly at right angles to said Northeasterly line 168.61 feet, more or less, to the Northeasterly line of Tract No. 9560, recorded in Book 133 Page(s) 43 and 44 of maps, records of said County; thence Northwesterly along said last mentioned Northeasterly line 116.78 feet, more or less, to the most Northerly corner of said Lot 3 of said Tract; thence Northwesterly along the Northeasterly line of the land described in Deed to Joseph Prank Suppon and wife, recorded in Book 6862 Page 217, of Official Records of said County, 150 feet to the Southeasterly line of the land described in Deed to the City of Burbank, recorded in Book 3207 Page 290, of Official Records of said County; thence Northeasterly along said Southeasterly line 168.55 feet to the True Point of Beginning.

Except therefrom that portion included within the following described land:

The Easterly 168.61 feet of the Southerly 15 feet only of that portion of Lot(s) 2 in Block 63 of Rancho Providencia and Scott Tract, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 43 Page(s) 47 of Miscellaneous Records, in the office of the County Recorder of said County, described as follows:

Beginning at the intersection of the Southerly line of Alameda Avenue, 100 feet wide, with the Westerly line of Avon Street, 30 feet wide; thence Southerly along the Westerly line of Avon Street, a distance of 267.29 feet to a point; thence South 67° 02' 50" West, a distance of 168.76 feet to the Easterly line of Tract No. 9560, recorded in Book 133 Page 44 of Maps, records of said County; thence Northerly along the Easterly line of said Tract No. 9560 and its Northerly prolongation, a distance of 266.91 feet to the Southerly line of said Alameda Avenue; thence Easterly along the Southerly line of said Alameda Avenue, a distance of 168.78 feet to point of beginning.

Assessor's Parcel No. 2483-024-405

**PARCEL 8: (115 North Avon)**

Parcel 8A:

The Easterly 150 feet of the Southerly 15 feet of that portion of Lot 2, in Block 63 of Subdivision of Rancho Providencia and Scott Tract, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 43, Pages 47 to 59 inclusive of Miscellaneous Records, in the office of the County Recorder of said County, described as follows:

Beginning at the intersection of the Southerly line of Alameda Avenue (100 feet wide) with the Westerly line of Avon Street (30 feet wide); thence Southerly along the Westerly line of Avon Street a distance of 267.29 feet to a point; thence South 67° 02' 50" West a distance of 168.76 feet to the Easterly line of Tract No. 9560 as per map recorded in Book 133, Pages 43 and 44 of Maps, in the office of the County Recorder of said County; thence Northerly along the Easterly line of said Tract No. 9560 and its Northerly prolongation a distance of 266.91 feet to the Southerly line of said Alameda Avenue; thence Easterly along the Southerly line of said Alameda Avenue a distance of 168.78 feet to the point of beginning.

Parcel 8B:

That portion of Lot 2, in Block 63 of Subdivision of Rancho Providencia and Scott Tract, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 43, Pages 47 to 59 inclusive of Miscellaneous Records, in the office of the County Recorder of said County, described as follows:

Beginning at the most Westerly corner of that certain Parcel of land conveyed to the State of California by deed recorded in Book D986, Page 856 of Official Records of said County; thence along the Northwesterly line of said Parcel of land so conveyed, North 68° 08' 03" East 18.61 feet; thence South 21° 51' 57" East 15.00 feet to the Southerly line of the Northerly 267.29 feet of said Lot 2; thence along said Southerly line, 68° 08' 03" West, 7.62 feet; thence South 75° 47' 26" East 51.61 feet; thence South 80° 08' 13" East 37.29 feet to the Southerly line of the Parcel of land conveyed to the State of California by deed recorded in Book D1025, Page 921 of said Official Records; thence along said last mentioned Southerly line, South 68° 08' 03" West 4.75 feet; thence Westerly in a direct line to a point in the Westerly line of the Parcel of land conveyed to the State of California by deed recorded in Book D435, Page 510, distant along said Westerly line South 21° 54' 27" East, 15.75 feet from said most Westerly corner; thence Northerly along said Westerly line to the point of beginning.

Parcel 8C:

That portion of Lot 2, in Block 63 of Subdivision of Rancho Providencia and Scott Tract, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 43, Pages 47 to 59 inclusive of Miscellaneous Records, in the office of the County Recorder of said County, described as follows:

00020

Beginning at a point in the Northeasterly line of said Lot 2, distant North 23° 05' 30" West 182.07 feet from the Northwesterly line of Olive Avenue, as shown on the map of said Tract; thence at right angles the said Easterly line along the Northwesterly line of the land described in deed recorded in Book 3418, Page 316, Official Records, South 68° 54' 30" West 168.61 feet to the Northeasterly line of Tract No. 9560 as per map recorded in Book 133, Pages 43 and 44 of Maps, in the office of the County Recorder of said County; thence along said Northeasterly line South 23° 05' 30" East 50 Feet to a point which bears North 23° 05' 30" West 217.37 feet from the said Northwesterly line of Olive Avenue; thence North 66° 54' 30" East 168.61 feet to the Northeasterly line of said Lot 2; thence North 23° 05' 30" West 49.99 feet to the point of beginning.

EXCEPT therefrom that portion of said land lying Southwesterly of the Northeasterly line of the land described in that certain deed recorded March 11, 1964 as Instrument No. 3501 of Official Records.

Assessor's Parcel No. 2483-024-406

### PARCEL 9: (3408 West Alameda)

Lots 6 and 7 of Tract No. 10135 in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 141 , Pages 21 and 22 of Maps, in the Office of the County Recorder of said County.

Assessor's Parcel No. 2483-023-429

### PARCEL 10: (3401 West Olive)

Lot 14 of Tract 10135, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 141 pages 21 and 22 of Maps, in the Office of the County Recorder of said County.

Except therefrom the Southwesterly 135 feet thereof measured Northeasterly at right angles from the Southwesterly line of said Lot 14 of Tract 10135.

Together with the Southeasterly 1/2 of that certain alley, 20 feet wide as shown on said Tract No. 10135, as per map recorded in Book 141 pages 21 and 22 of Maps, bounded Northeasterly by the Southwesterly line of Lima Street, 60 feet wide, and bounded Southwesterly by the Northeasterly line of Avon Street, 60 feet wide, except therefrom the Southwesterly 135 feet thereof measured Northeasterly at right angles from the Northwesterly prolongation of the Southwesterly line of said Lot 14 of Tract 10135, subject to Resolution No. 26,839 adopted by the City Council of the City of Burbank on December 7, 2004.

Assessor's Parcel No. 2483-023-901

**PARCEL 11: (111 North Lima, Portion of Alley Parallel to Alameda between Avon and Lima)**

That portion of Lot 1 in Block 63 in the Subdivision of the Rancho Providencia and Scott Tract, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 43 page 47 et seq., of Miscellaneous Records, in the Office of the County Recorder of said county, as follows:

Commencing at the intersection of the Northwesterly line of Olive Avenue with the Northerly prolongation of the Easterly line of Avon Street, as said Avenue and Street are shown on map of Tract No. 7553; recorded in Book 99 page 16 et seq., in the Office of the said Recorder; thence along said prolongation North 22 degrees 56 minutes 55 seconds West, 150.00 feet; thence parallel with said Northwesterly line of Olive Avenue, North 40 degrees 10 minutes 35 seconds east 246.99 feet to a point distant along said parallel line South 40 degrees 10 minutes 35 seconds West 56.00 feet from the Westerly line of Lima Street, as shown on map of Tract No. 10135 recorded in Book 141 page 21 et seq., in the Office of said Recorder, said point being the true point of beginning; thence North 40 degrees 10 minutes 35 seconds, East, 56.00 feet to last mentioned line; prolongation of last mentioned Westerly line, South 22 degrees 56 minutes 55 seconds East, 138.79 feet to a line that is parallel with and distant 10.00 feet Northwesterly at right angles from said Northwesterly line of Olive Avenue, last mentioned parallel line being the Northwesterly line of the land described in Document No. 190759, filed under Certificate of Title No. FH-52777 on file in the Office of Registrar of Titles of said County; thence along last mentioned parallel line South 40 degrees 10 minutes 35 seconds West, 56.00 feet to a line that is parallel with said Southerly prolongation of the Westerly line of Lima Street and passes through to the true point of beginning; thence North 22 degrees 56 minutes 55 seconds West 138.79 feet to the true point of beginning.

Assessor's Parcel Nos. 2483-023-900

**PARCEL 12: (3413 W. Olive)**

That portion of Lot 1 in Block 63 of the Subdivision of the Rancho Providencia and Scott Tract, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 43, Page 47, et seq., of Miscellaneous Records, in the Office of the County Recorder of said County, described as follows:

Beginning at the intersection of the Northwesterly line of Olive Avenue, with the Northwesterly prolongation of the Northeasterly line of Avon Street, as said Avenue and Street are shown on map of Tract No. 7553, as per map recorded in Book 99, Page 16, et seq., of Maps, in the Office of the County Recorder of said County; thence along said prolongation North 22° 56' 55" West 150 feet; thence parallel with said Northwesterly line of Olive Avenue, North 40° 10' 35" East 128.96 feet; thence parallel with the Southeasterly prolongation of the Southwesterly line of Lima Street as shown on map of Tract No. 10135, as per map recorded in Book 141, Page(s) 21 and 22 of Maps, in the Office of the County Recorder of said County, South 22° 56' 55" East 17.58 feet to a point distant North 22° 56' 55" West 132.42 feet from the said Northwesterly line, said point being the True Point of Beginning; thence parallel with said Northwesterly line North 40° 10' 35" East 40 feet; thence parallel with said Southeasterly

prolongation South 22° 56' 55" East 132.42 feet to said Northwesterly line; thence along said Northwesterly line South 40° 10' 35" West 40 feet; thence North 22° 56' 55" East 132.42 feet to the True Point of Beginning.

Except that portion of the above described land within the Northwesterly 10 feet of Olive Avenue, 80 feet wide, as described in deed to the City of Burbank, registered as Document No. 190759, on Certificate FH-52777, in the office of the Registrar of Land Titles.

Assessor's Parcel No. 2483-023-425

**PARCEL 13:**

**PARCEL 13A: (3419 W. Olive)**

That portion of Lot 1 in Block 63 of the Subdivision of the Rancho Providencia and Scott Tract, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 43, Page 47 et seq., of Miscellaneous Records, in the Office of the County Recorder of said County, described as follows:

Beginning at the intersection of the Northwesterly line of Olive Avenue, with the Northwesterly prolongation of the Northeasterly line of Avon Street, as said Avenue and Street are shown on map of Tract No. 7553, as per map recorded in Book 99, page 16; et seq., of Maps, in the Office of the County Recorder of said County; thence along said prolongation North 22° 56' 55" West 150 feet; thence parallel with said Northwesterly line of Olive Avenue, North 40° 10' 35" East 50 feet; thence parallel with the Southeasterly prolongation of the Southwesterly line of Lima Street, as shown on map of Tract No. 10135, as per map recorded in Book 141, Page(s) 21 and 22 of Maps, in the Office of the County Recorder of said County, South 22° 56' 55" East 17.58 feet to a point distant North 22° 56' 55" West 132.42 feet from said Northwesterly line, said point being the True Point of Beginning; thence parallel with said Northwesterly line North 40° 10' 35" East 78.96 feet; thence parallel with said Southeasterly prolongation South 22° 56' 55" East 132.42 feet to said Northwesterly line; thence along said Northwesterly line South 40° 10' 35" West 78.96 feet; thence North 22° 56' 55" West 132.42 feet to the True Point of Beginning.

Assessor's Parcel No. 2483-023-425

**PARCEL 13B: (3421 W. Olive)**

That portion of Lot 1 in Block 63 of Subdivision of the Rancho Providencia and Scott Tract, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 43, Page 47 et seq., of Miscellaneous Records, in the Office of the County Recorder of said County, described as follows:

Beginning at a point on the Northeasterly line of Avon Street, distant North 22° 56' 55" West 122.42 feet from the intersection of said Northeasterly line with the Northwesterly line of Olive Avenue, as shown on map of Tract No. 10135, recorded in Book 141, Page(s) 21 and 22 of Maps, in the Office of the County Recorder of said County; thence North 22° 56' 55" West 27.58 feet; thence parallel with said Northwesterly line of Olive Avenue and along the

Southeasterly line of Lot 15 of said Tract No. 10135, North 40° 10' 3'5" East 168.96 feet; thence parallel with the Southeasterly prolongation of Lima Street as shown on said map of Tract No. 10135, South 22° 56' 55" East 17.58 feet to a point distant North 22° 56' 55" West 132.42 feet from said Northwesterly line of Olive Avenue; thence parallel with said Northwesterly line South 40° 10' 35" West 118.96 feet; thence parallel with said prolongation of Lima Street, South 22° 56' 55" East 10.00 feet to a line parallel with said Northwesterly line and which passes through the point of beginning; thence South 40° 10' 35" West 50.00 feet to the point of beginning.

Said land was withdrawn from the effect and operation of the Land Title Law by Certificate of Cancellation and Withdrawal recorded September 14, 1954, as Instrument No. 3501, Official Records.

Assessor's Parcel No. 2483-023-426 and 2483-023-427

**PARCEL 14: (102, 104 and 106 N. Avon)**

That portion of Lot 1 in Block 63 of Subdivision of the Rancho Providencia and Scott Tract, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 43, Page 47, et seq., of Miscellaneous Records, in the Office of the County Recorder of said County, described as follows:

Beginning at the intersection of the Northeasterly line of Avon Street with the Northwesterly line of Olive Avenue; as shown on map of Tract No. 10135, recorded in Book 141, Page(s) 21 and 22 of Maps, in the Office of the County Recorder of said County; thence along said Northeasterly line North 22° 56' 55" West 122.42 feet; thence parallel with said Northwesterly line North 40° 10' 35" East 50.00 feet to a line parallel with the prolongation of Lima Street, as shown on said map of Tract No. 10135, which passes through a point in the Southeasterly line of Lot 15 of said Tract No. 10135, distant North 40° 10' 35" East 50.00 feet from the most Southerly corner of said Lot 15; thence parallel with said Lima Street, South 22° 56' 55" East 122.42 feet to said Northwesterly line of Olive Avenue; thence South 40° 10' 35" West 50.00 feet to the point of beginning.

Excepting the Southeasterly 10 feet thereof being that portion within Olive Avenue, 80 feet wide, described in Document No. 190759, filed under Certificate of Title No. FH-52777, in the office of the Registrar of Titles of said County.

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Sheri Bluebond, Presiding
### Courtroom 1475 Calendar

Wednesday, May 16, 2007                                    Hearing Room    1475

---

10:00 am

06-16059          PW, LLC                                                 Chapter    11

#2.00             Motion for order authorizing the sale of substantially all of the assets of
                  the estate free and clear of liens, authorizing the assumption and
                  assignment of certain executory contracts and expired leases,
                  determining the value of the assets being sold and valuing claims secured
                  by such assets authorizing the payment of commissions to Trustee's real
                  estate brokers, waiver of 10 day stay, and related relief

                  fr. 4-5-07

                              Docket #:   94

**Courtroom Deputy:**

- NONE LISTED -

**Tentative Ruling:**

Tentative Ruling for May 16, 2007:

Did anyone qualify as an overbidder?  Did any party express interest in overbidding who
was not qualified, in the trustee's opinion?  Does anyone object to DB Burbank's request
for a good faith finding?

Hearing required.
--------------------------------
Final Ruling for May 16, 2007:

Overrule Clear Channel's evidentiary objections to declarations of Nancy Knupfer,
Duncan Lemmon and Andrew Osborne.

Grant remainder of relief requested by motion, other than waiver of 10-day stay.  Make
good faith finding under section 363(m).

More specifically, the Court finds as follows:

1.  The bankruptcy court retains jurisdiction to entertain the trustee's request for a good
faith finding under section 363(m), notwithstanding Clear Channel's appeal of its earlier

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Sheri Bluebond, Presiding
### Courtroom 1475 Calendar

Wednesday, May 16, 2007                                      Hearing Room    1475

10:00 am

Cont....        PW, LLC                                                Chapter   11

sale order.  The earlier sale orders are interlocutory; Clear Channel's appeal is premature.
The original motion always contemplated this multi-step process and requested a good
faith finding from the inception.  This makes the facts of this case entirely distinguishable
from In re Thomas (aka Namba).  In Namba, the bankruptcy court was not asked to make
a good faith finding in connection with the sale motion, and the issue of good faith arose
for the first time on appeal.  A party cannot divest the bankruptcy court of jurisdiction in
the middle of a proceeding or contested matter by filing a premature or interlocutory
appeal.  (For the same reason, it is not an impermissible collateral attack on any prior
order of this court for Clear Channel to challenge the request for a good faith finding at
this juncture.)

2.  DB Burbank's belated production of any documents that may (or may not) have been
responsive to Clear Channel's document production request is not sufficient to make DB
Burbank ineligible for a good faith finding.  Any prejudice that might otherwise have
resulted from the delayed production has been ameliorated by the Court's consideration
of Clear Channel's late-filed opposition.

3.  DB Burbank's conduct in connection with its (failed) prepetition attempt to negotiate a
consensual plan of reorganization with debtor's prior counsel does not constitute bad faith
or have any bearing upon the appropriateness of a finding under section 363(m).

4.  The Court is not persuaded that DB Burbank's (failed) attempt to buy the cooperation
of the debtor's principal in connection with its nonjudicial foreclosure sale constitutes bad
faith or a violation of Title 18; however, even assuming for the sake of this analysis that
DB Burbank's conduct in this regard was improper, it is difficult to see how it has any
bearing upon a good faith analysis under section 363(m).  These negotiations had nothing
to do with the sale that was eventually negotiated.  A trustee, who had not been involved
in these negotiations and knew nothing about them, was appointed and began
negotiations afresh.  The record before the Court is sufficient to demonstrate that the
post-petition negotiations between the trustee and DB Burbank were conducted in good
faith, on an arms-length basis, and were not affected in any by any negotiations that may
have occurred prepetition between DB Burbank and Mr. Platt.  The issue, for the purpose
of a good faith finding under section 363(m), is whether the purchaser has acted in good
faith in connection with the proposed sale, not whether the purchaser has ever committed

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Sheri Bluebond, Presiding
### Courtroom 1475 Calendar

**Wednesday, May 16, 2007**                                        **Hearing Room    1475**

---

<u>10:00 am</u>

**Cont....**         **PW, LLC**                                                        **Chapter   11**

at some point in the past an improper act of some kind.

5. Clear Channel seems to be arguing that, in order to establish good faith, DB Burbank should have left something on the table for unsecured creditors or otherwise taken steps to ensure that the estate would not be administratively insolvent. The Court does not agree with this proposition. It is not bad faith for a secured creditor with significant bargaining power to exercise the leverage available to it. A secured creditor is not required to make dollars available for unsecured creditors or administrative claimants in order to be eligible for a good faith finding.

6. In the Ninth Circuit, the parties do not need to establish that a buyer paid 100 percent of the property's appraised value, or even 75 percent of the property's appraised value, in order to be eligible for a good faith finding. Moreover, Clear Channel has not established that the price paid was anything less than fair value for the property. (The $60 million appraisal to which Clear Channel alludes was premised on assumptions that are not accurate.) The only other expressions of interest that the trustee received were nowhere near the purchase price that DB Burbank has offered for the property, and there is no reason to believe that, but for the timing of the sale, a higher price would have been offered. Therefore, to the extent that the purchase price paid is relevant to the good faith analysis, in this instance, the amount of the purchase price weighs in favor of granting the requested 363(m) finding, as DB Burbank is offering far more than anyone else is willing to pay for the property.

Party Information

|  |  |
|---|---|
| Debtor: | PW, LLC |
|  | Atty: Martin J Brill |
|  | Atty:  Levene, Neale, Bender, Rankin & Brill |
| Movant: | Nancy Knupfer |
|  | Atty:  Danning, Gill, Diamond & Kollitz |
|  | Atty: John N Tedford |
| Trustee: | Nancy Knupfer |
|  | Atty:  Danning, Gill, Diamond & Kollitz |
|  | Atty: John N Tedford |

---